SUPERIOR COURT OF DISTRICT OF COLUMBIA
CIVIL DIVISION
500 INDIANA AVENUE, NW  Suite 5000
WASHINGTON, DC  20001  (202) 879- 1133



ANNE  JONES
    Plaintiff         (
1827 24th Street, NE.
Wash. DC 20002

    v.

SUPER SHUTTLE INCORPORATED
    Defendant.   Suite 110
6900 Virginia Manor Rd.
Beltsville, MD 20705

Case Number   16 - 0 0 0 6 7 2 8

SUMMONS OF COMPLAINT

    This Matter comes before Superior Court of District of Columbia, on July 31, 2016

there was a return trip from Toronto, Canada to take the Plaintiff from Baltimore Washington

Airport to my destination in Washington, DC.   The Plaintiff had made reservations in the

amount of $39.10 cents.   The curbside supervisor of  Super Shuttle stated that mam we

don't have transportation available know, but you would have to wait even if you have a

reservations for 45 minutes. After Ms. Jones waited for another Super Shuttle to show up,

the curb side supervisor Sherrie never acknowledge Ms. Jones again.   There were other

passengers being prepared to get transportation but Ms. Jones continued to be patient and

waited, then there were (3) other passengers Latino which came from the inside of the Baltimore

airport, and was escorted to the van and while I was sitting in a wheelchair the curbside

supervisor Sherrie stated, that mam someone will be over to help no one never did I asked

Ms. Sherrie for her help or one of the other ladies they refused I was able to get up out of the

wheel chair on my own and my luggage was put in the van by the driver! I stated, to the

Super shuttle supervisor Ms. Sherrie quote "why she allowed the Latino's to board first when

I've been waiting for over 45 minutes. The Latino lady and her (2) sons was rude to me, one

of them was boarded the van the same time I was getting on and he stated to me in a

disrespectful way and said' Don't you speak to my mother about nothing or I will knock you

out, don't say nothing to her!   I mention to the curbside supervisor Sherrie why she allowed

these people to board before me and I have a disability, she stated, mam I didn't forget you,

quote" but with a loud and vocal voice you are not going to disrupt my guest nor my staff, then

Ms. Sherrie went and said, after I was already in the van she then stated, that "You know what

you are not going to continue to stay in the van and I'm going to call the police and have you

remove I don't care what takes place you will not be riding by Super Shuttle not know and when

the Police arrived they got loud at me and I was  handicap.   I did not like the mistreatment I

received from Super Shuttle staff.  I was humilated by the Police they deliberately threaten me

stating that if I didn't get out of the van they will be forced to drag me off and we might take you,

to jail. I stated to the curbside supervisor Ms. Sherrie you are wrong for this and I will file a

complaint against Super Shuttle, the Police spoke with me after they helped me out then the

Officer caucasin stated mam we just doing our job, the curbside supervisor stated, she wanted

you off the van.   The other officer was a Latino, he spoke vocal and loud as well and stated if I

didn't corporate they would arrest me.   I'm  bringing a lawsuit against Super Shuttle for pain and

suffering, reservations I paid for I was only reimbursed $35.10 and I never was presented a

letter from Corporate.   I tried to compromise with the company they weren't to pleasant, know

I'm requesting a law suit for discriminating against me allowed the Super Shuttle driver to

drive off after my bags was in the van and of course, I was already sitting and had been waiting

for over 45 minutes, I never received any kind of assistant from Super Shuttle staff.

Title II Regulations of Disabilities. Title III prohibits discrimination on the basics of

disability in the activities of places of public accommodation (business and accommodations)

Ms. Jones was mistreated and discriminated therefore, her claim will be on title II and title III,

which are codified at 28 CFR part 35 (titleIII), and part of 36, contain the ADA Standards for

Accessible Design which were based upon the version of the Americans with Disabilities Act

Accessibilty Guidelines.

Ms. Anne Jones was discriminated against based on her disability, and she suffered hardship

and pain.  Ms. Jones also, paid for service she did not get from Super Shuttle Services, it is

required under the law that she is entitle for a settlement from the company in the amount of

$150,000.00 dollars based on the code titleII, and title III, which are codified  at 28 CFR of the

law upon the version amended by DOJ not discriminate of Americans with Disabilities Act,

Accessibilty Guidelines. (Encl.)

Clerk  of  the Court

Super Shuttle Incorporated System
Name of Defendant  Jacqueline Holloway Suite

6900 Virginia Manor Rd
Address  Beltsville, MD 20705

(410) 505-8680
Telephone

Name  of Plaintiff

Address

Telephone

**Departure Itinerary (To the Airport)**

Exhibit I

| | |
|---|---|
| **Passengers:** | 1 |
| **Special Considerations:** | ACCESSIBLE SERVICE IS REQUIRED. |
| **Service Type:** | SHARED RIDE VAN SERVICE (UP TO 10 PASSENGERS IN PARTY) |
| **Fare:** | $39.00 |
| **Tip:** | $0.00 |
| **Web/Group discount:** | $3.90 |
| **Total:** | **$35.10** |



# Where's my ride?
Track your vehicle real-time.



 Try Our **NEW** Airport Mobile Self Check-In 

**Billing**

| | |
|---|---|
| **Payment Method:** | PREPAID CREDIT CARD |
| **Card type:** | VISA |
| **Card number:** | XXXX-XXXX-XXXX- 4910 |

**Thank you for using SuperShuttle!**

We value your safety. Please wear your seatbelt during your ride with us.

To cancel your reservation,
click [here].

To review our change / cancellation policies, click [here].

Contact | Terms | Privacy

Super Shuttle Corp. Suite
D 1110
6900 Virginia Manor Rd.
Beltsville, MD 20705

public entities and public transportation; Title III covers public accommodations and commercial facilities; and Title IV covers telecommunications. There is also Title V, which contains miscellaneous provisions.

The most important civil rights decision for people with disabilities is the United States Supreme Court's Olmstead decision. Olmstead was based on Title II of the ADA.

## History of the ADA



For much of American history, people with disabilities were discriminated against. They were prohibited from attending schools. They were denied employment. They were forced to live in institutions that were segregated where only people with similar disabilities lived.

Many people were separated from their families as children and lived their entire lives in these institutions. In Georgia, for instance, approximately thirty thousand unmarked graves are scattered in the fields near the state's largest hospital. These grave hold the remains of men and women who had been confined for decades there.

Over time, individuals and groups began to advocate against this discrimination. An entire movement developed seeking the basic rights guaranteed to all Americans. What is now called the disability rights movement developed during the same time period that civil rights movements were developing in the U.S. that were based on race, ethnicity, and gender.



Justin Dart is often thought of as the father of the ADA. Dart was a successful businessman who created a number of businesses, including Tupperware Japan. He earned degrees in political science and history and wanted to become a teacher, but his teaching certificate was withheld because he used a wheelchair. In 1981, President Ronald Reagan appointed Dart to be the vice-chair of the National Council on Disability. Dart traveled the country meeting with disability rights advocates. He and other advocates on the National Council ultimately created a policy proposal for national civil rights legislation to end disability discrimination. This became the framework for the ADA.

The National Council on Disability successfully recruited Senator Lowell P. Weicker, Jr. (R-CT) and Congressman Tony Coelho (D-CA) to introduce the Americans with Disabilities Act in 1988. While the ADA did not pass that year, it was reintroduced in 1989 and championed by Senator Tom Harkin (D-IA).

Throughout the bill's travels through Congress, disability rights advocates worked with legislative leaders to ensure its passage. Thousands of disability advocates came to the U.S. Capitol on March 12, 1990 to rally and meet with legislators. The event culminated with the Capitol Crawl where over 60 disability advocates abandoned their wheelchairs and climbed the 83 steps of the Capitol to urge the ADA's passage.

The Americans with Disabilities Act was signed on July 26, 1990.  At its signing, President Bush stated:

"This act is powerful in its simplicity. It will ensure that people with disabilities are given the basic guarantees for which they have worked so long and

so hard: independence, freedom of choice, control of their lives, the opportunity to blend fully and equally into the rich mosaic of the American mainstream."

## Framework of the Americans with Disabilities Act (1990)

At the outset of the ADA, the United States Congress made specific findings that laid out the history of discrimination against people with disabilities and the need for the new law. It then stated the purpose of the Americans with Disabilities Act. Next, Congress defined the term qualified person with a disability in order to explain who is protected by the law. Finally, Congress divided the ADA into five titles to differentiate the areas of American life covered by the law.

### Congressional Findings in the ADA

Before setting out the law, the United States Congress made certain findings in the ADA, including:

- "disabilities in no way diminish a person's right to fully participate in all aspects of society, yet many people with physical or mental disabilities have been precluded from doing so because of discrimination"
- "historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"
- "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity full participation, independent living, and economic self-sufficiency"

### Purpose of the ADA

Congress stated the purpose of the ADA is "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."

## Definition of Disability

The ADA prohibits discrimination against what it terms a "qualified person with a disability." This term is defined as 42 U.S.C. § 12102. The term "disability" means, with respect to an individual: "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

## Titles of the ADA

### Title I—employment

Title I of the Americans with Disabilities Act of 1990 covers employers in the private sector, state and local governments, and labor unions. It prohibits discrimination against such individuals and requires employers to provide such individuals reasonable accommodations. It covers employers with 15 or more employees.

### Title II—public entities (and public transportation)

Title II of the ADA prohibits public entities, including state and local governments, from discriminating against "qualified individuals with disabilities" by excluding them from services and activities due to their disability. As part of the ADA, federal regulations were created to enforce the Act. One of the regulations created by the United States Justice Department was called the "integration mandate." The integration mandate requires public

entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of the qualified individuals with disabilities." This integration mandate would become the basis of the Olmstead decision in 1999.

Title II of the ADA also covers public transportation provided by state and local government entities.

### Title III—public accommodations (and commercial facilities)

Title III of the ADA covers businesses that are open to the public that fall within one of 12 categories listed in the Americans with Disabilities Act. It prohibits discrimination on the basis of disability and requires requires newly constructed or altered buildings of these businesses to comply with the ADA Standards.

### Title IV—telecommunications

Title IV of the ADA amended the Communications Act of 1934 to require telecommunications companies to provide functionally equivalent services to individuals with disabilities.

### Title V – miscellaneous provisions

Title V provides miscellaneous provisions that cover the entire ADA. Most importantly, it prohibits retaliation against individuals who enforce their rights under the Americans with Disabilities Act.

- Read stories of people whose lives have been transformed by the ADA and Olmstead.
- Learn about self-advocacy based on the ADA and Olmstead.
- Find disability resources in your state.
- Learn about the ADA's most important court decision -- Olmstead -- and watch a movie about it.
- Back to the top of this page

© Olmstead Rights | PRIVACY POLICY
TERMS & CONDITIONS | PHOTO CREDITS

 Atlanta Legal Aid Society

 LSC

DISABILITY RIGHTS



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
500 Indiana Avenue, N.W., Suite 5000
Washington, D.C. 20001 Telephone: (202) 879-1133

ANNE    Jones                                                    Plaintiff
1827 24th Street, NE
Wash. DC 20009 vs.                                               Case Number   16 - 0 0 0 6 7 2 8

Super Shuttle Services Inc.
                                                        Defendant

### SUMMONS

To the above named Defendant:

    You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

    You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Name of Plaintiff's Attorney - ProSe                          *Clerk of the Court*

Anne    Jones, Commissioner                   By   JClaire Simpson
Address                                                            Deputy Clerk
1827 24th Street, NE Ste # 162

(202) 705-4820                                Date   9/10/2016
Telephone
如需翻译,请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bài dịch, hãy gọi (202) 879-4828
번역을 원하시면, (202) 879-4828 로 전화주십시요     የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

    If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

ANNE JONES
    Vs.                                          C.A. No.        2016 CA 006728 B
SUPER SHUTTLE INCORPORATED

## INITIAL ORDER AND ADDENDUM

    Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

    (1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

    (2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(m).

    (3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

    (4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

    (5) Upon advice that the date noted below is inconvenient for any party or counsel, the Quality Review Branch (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

    (6) Parties are responsible for obtaining and complying with all requirements of the General Order for Civil cases, each Judge's Supplement to the General Order and the General Mediation Order. Copies of these orders are available in the Courtroom and on the Court's website http://www.dccourts.gov/.

                                         Chief Judge Lee F. Satterfield

Case Assigned to: Judge MAURICE ROSS
Date:  September 10, 2016
Initial Conference: 9:00 am, Friday, December 09, 2016
Location:  Courtroom 100
            500 Indiana Avenue N.W.
            WASHINGTON, DC  20001                              Caio.doc

## ADDENDUM TO INITIAL ORDER AFFECTING
## ALL MEDICAL MALPRACTICE CASES

In accordance with the Medical Malpractice Proceedings Act of 2006, D.C. Code § 16-2801, et seq. (2007 Winter Supp.), "[a]fter an action is filed in the court against a healthcare provider alleging medical malpractice, the court shall require the parties to enter into mediation, without discovery or, if all parties agree[,] with only limited discovery that will not interfere with the completion of mediation within 30 days of the Initial Scheduling and Settlement Conference ("ISSC"), prior to any further litigation in an effort to reach a settlement agreement.  The early mediation schedule shall be included in the Scheduling Order following the ISSC.  Unless all parties agree, the stay of discovery shall not be more than 30 days after the ISSC." D.C. Code § 16-2821.

To ensure compliance with this legislation, on or before the date of the ISSC, the Court will notify all attorneys and *pro se* parties of the date and time of the early mediation session and the name of the assigned mediator.  Information about the early mediation date also is available over the internet at https://www.dccourts.gov/pa/.  To facilitate this process, all counsel and *pro se* parties in every medical malpractice case are required to confer, jointly complete and sign an EARLY MEDIATION FORM, which must be filed no later than ten (10) calendar days prior to the ISSC.  Two separate Early Mediation Forms are available.  Both forms may be obtained at www.dccourts.gov/medmalmediation.  One form is to be used for early mediation with a mediator from the multi-door medical malpractice mediator roster; the second form is to be used for early mediation with a private mediator.  Both forms also are available in the Multi-Door Dispute Resolution Office, Suite 2900, 410 E Street, N.W.  Plaintiff's counsel is responsible for eFiling the form and is required to e-mail a courtesy copy to earlymedmal@dcsc.gov.  *Pro se* Plaintiffs who elect not to eFile may file by hand in the Multi-Door Dispute Resolution Office.

A roster of medical malpractice mediators available through the Court's Multi-Door Dispute Resolution Division, with biographical information about each mediator, can be found at www.dccourts.gov/medmalmediation/mediatorprofiles.  All individuals on the roster are judges or lawyers with at least 10 years of significant experience in medical malpractice litigation. D.C. Code § 16-2823(a).  If the parties cannot agree on a mediator, the Court will appoint one. D.C. Code § 16-2823(b).

The following persons are required by statute to attend personally the Early Mediation Conference: (1) all parties; (2) for parties that are not individuals, a representative with settlement authority; (3) in cases involving an insurance company, a representative of the company with settlement authority; and (4) attorneys representing each party with primary responsibility for the case. D.C. Code § 16-2824.

No later than ten (10) days after the early mediation session has terminated, Plaintiff must eFile with the Court a report prepared by the mediator, including a private mediator, regarding: (1) attendance; (2) whether a settlement was reached; or, (3) if a settlement was not reached, any agreements to narrow the scope of the dispute, limit discovery, facilitate future settlement, hold another mediation session, or otherwise reduce the cost and time of trial preparation. D.C. Code § 16-2826.  Any Plaintiff who is *pro se* may elect to file the report by hand with the Civil Clerk's Office.     The forms to be used for early mediation reports are available at www.dccourts.gov/medmalmediation.

Chief Judge Lee F. Satterfield

Caio.doc

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

ANNE JONES,

    Plaintiff,

v.                                     Case No. 2016 CA 0006728
                                          Judge: The Honorable Maurice A. Ross
                                          Judge
                                          Next Event: MOTION TO DISMISS

SUPER SHUTTLE INCORPORATED,

    Defendant.

## MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)

COMES NOW Defendant Shuttle Express, Inc. (erroneously referred to in the Complaint as Super Shuttle Incorporated) (hereinafter, "Supershuttle"), by counsel, pursuant to Rule 12(b)(6) of the Superior Court Civil Rules, and moves to dismiss Plaintiff's Complaint on the following grounds:

(1)    The Complaint fails to state a cause of action under either Title II or Title III of the Americans with Disabilities Act ("ADA").

(2)    Title II of the ADA does not apply to private companies such as Supershuttle. Plaintiff, therefore, cannot state any claim against Supershuttle under Title II of the ADA.

(3)    Plaintiff has failed to allege facts sufficient to state a claim under Title III of the ADA.

(4)    Plaintiff cannot state a claim under Title III of the ADA, because the only relief she seeks, monetary damages, is unavailable under Title III.

In support of this Motion, Supershuttle incorporates, as if set forth fully herein, its Memorandum of Points and Authorities in Support of this Motion to Dismiss filed simultaneously herewith.

WHEREFORE, Defendant Shuttle Express, Inc. (erroneously referred to in the Complaint as Super Shuttle Incorporated) (hereinafter, "Supershuttle"), by counsel, respectfully requests that this Court grant its Rule 12(b)(6) Motion to Dismiss and enter an Order dismissing the Complaint with prejudice.

This 3rd day of October 2016  .                    Respectfully submitted,

                                                      **SUPER SHUTTLE INCORPORATED**
                                                      By Counsel

                                                      /s/_____
                                                      Stanley P. Wellman (D.C. Bar No. 1031477)
                                                      M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
                                                      Harman, Claytor, Corrigan & Wellman
                                                      P.O. Box 70280
                                                      Richmond, Virginia 23255
                                                      804-747-5200 - Phone
                                                      804-747-6085 - Fax
                                                      swellman@hccw.com
                                                      sfisher@hccw.com


                          **RULE 12-I(a) CERTIFICATION**

       Pursuant to SCR-Civil 12-I(a), the undersigned counsel contacted Plaintiff, *pro se*, to obtain her consent to the relief requested.  Plaintiff, *pro se*, would not consent to the motion.


                                          /s/_____
                                          M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
                                          Harman, Claytor, Corrigan & Wellman, P.C.
                                          P.O. Box 70280
                                          Richmond, Virginia 23255
                                          804-747-5200 - Phone
                                          804-747-6085 - Fax
                                          sfisher@hccw.com

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2016, I electronically filed the foregoing with the Clerk of Court using CaseFileXpress, which will send notification of such filing to the following:

Not applicable

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Anne Jones
1827 24th Street, NE
Washington, DC 20002

/s/
Stanley P. Wellman (D.C. Bar No. 1031477)
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
sfisher@hccw.com

3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

ANNE JONES,

    Plaintiff,

v.                           Case No. 2016 CA 0006728
                                 Judge: The Honorable Maurice A. Ross
                                 Judge
                                 Next Event: MOTION TO DISMISS

SUPER SHUTTLE INCORPORATED,

    Defendant.

**<u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)</u>**

      Defendant Shuttle Express, Inc. (erroneously referred to in the Complaint as Super Shuttle Incorporated) (hereinafter, "Supershuttle"), by counsel, states as follows for its Memorandum of Points and Authorities in Support of their Motion to Dismiss Complaint Pursuant to Rule 12(b)(6) of the Superior Court Civil Rules.

## I.    <u>ALLEGATIONS</u>

      Plaintiff Anne Jones ("Jones") filed suit against Supershuttle on September 10, 2016. While the allegations in the Complaint are stream-of-conscientiousness and hard to decipher, Jones claims she is disabled and appears to be upset that she was not given assistance in boarding a Super Shuttle vehicle. <u>See</u> Complaint at 1-3. Jones also complains that a Latino family was permitted to board before her and that the family was rude to her. <u>Id.</u> at 2. She also alleges that a Super Shuttle employee had the police remove her from the vehicle. <u>Id.</u> Jones asserts that these actions were taken as a result of her undisclosed disability. <u>Id.</u> at 3. Jones claims her rights were violated under Title II and Title III of the Americans with Disabilities Act ("ADA "). <u>Id.</u>

The only relief she seeks is $150,000.00 in compensatory damages.  Id.  Jones, however, has failed to state a claim under Title II or III of the ADA.

## II.    ARGUMENT

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim.  Woods v. District of Columbia, 63 A.3d 551, 552-53 (D.C. 2013).  To meet that standard, "factual allegations must be enough to raise a right to relief above the speculative level," and the pleading must contain "enough facts to state a claim to relief that is plausible on its face," and "nudge [her] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).   The Court accepts the allegations in the complaint as true and views all facts and draws all reasonable inferences in favor of the plaintiff.  Id. at 553.  "[T]he tenant that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice,' and 'unadorned, the-defendant-unlawfully-harmed-me accusations' also are insufficient."  Sundberg v. TTR Realty, LLC, 108 A.3d 1123, 1128-29 (D.C. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (quoting Potomac Dev. Corp., 28 A.3d 531, 544 (D.C. 2011)).

The purpose of a pleading is to put the other party on notice of the nature of the claim.

Carter-Obayuwana v. Howard Univ., 764 A.2d 779, 788 (D.C. 2001).  "A party is entitled to be

fairly informed by the pleadings of the opposite party of the specific nature of the questions involved in the case." Etty v. Fed. Consulting Serv., 59 A.2d 692, 693 (D.C. 1948).

**B.**     **Title II of the ADA Does Not Apply to Private Companies Such As Supershuttle.**

Title II of the ADA covers "public entities," which is defined to include "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C.A. § 12131. Supershuttle is a private company, not a public entity. Accordingly, Title II of the ADA does not apply to Supershuttle. See e.g., Lee v. Corr. Corp. of Am./Corr. Treatment Facility, 61 F. Supp. 3d 139, 143 (D.D.C. 2014) ("The ADA's text provides no indication that a private company is a "public entity" for the purposes of Title II [of the ADA]."); Williams v. Savage, 569 F. Supp. 2d 99, 111 (D.D.C. 2008) (granting insurance company's motion to dismiss a claim under Title II of the ADA on the grounds that it does not apply to private companies). Jones cannot state a claim against Supershuttle under Title II of the ADA, and that claim should be dismissed with prejudice.

**C.**     **Plaintiff Also Has Not Stated a Claim under Title III of the ADA.**

Title III of the ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182. Unlike Title II, Title III applies to private entities that are engaged in public transportation. See 42 U.S.C.A. §§ 12181; 12184. While Title III may apply to Supershuttle, Jones has not alleged any facts that would support a claim. Moreover, the only relief sought by Jones is monetary damages in the amount of $150,000.00, and such damages are not recoverable under Title III.

1.     **The Complaint Does Not Allege Any Facts that State a Claim under Title III of the ADA.**

To state a claim for a violation of Title III, a Complaint must allege that: (1) the plaintiff has a disability; (2) that the defendants is subject to Title III;  and (3) that the plaintiff was denied an opportunity to benefit from the defendant's services or otherwise was discriminated against because of his disability.  Reeves v. MV Transp., Inc., 845 F. Supp. 2d 104, 107 (D.D.C. 2012) (citing *Poldberg v. 5 Star Flash, Inc.,* No. 11 CV 3194, 2011 WL 6097990, at *2 (N.D.Ill. Dec. 1, 2011).   An ADA claim fails if there are no allegations that link defendant's alleged conduct with plaintiff's disability.  Id.  Jones has not alleged any facts indicating that she was not permitted to ride with Supershuttle because of her disability.

Instead, the allegations are that she was upset that a Latino family was allegedly permitted to board the Supershuttle van before her.[1]  Specifically, Jones alleges that one of the individuals on the van told her, "Don't you speak to my mother about nothing or I will knock you out, don't say nothing to her!"  See Complaint at 2.  Jones then asserts that she complained about the Latino family being permitted to board before her.  Id.  A Supershuttle manager named Ms. Sherrie allegedly responded, "Mam, I didn't forget you" and with a "loud and vocal voice you are not going to disrupt my guess nor my staff."  Id.  Ms. Sherrie allegedly went on to state, "You know what you are not going to continue to stay in the van and I'm going to call the police and have you remove."  Id.  The police allegedly responded and removed Jones from the van.  Id.  The only reasonable inference that can be drawn from these allegations is that Jones needed to be separated from the Latino family.  There is absolutely no indication from these facts that Jones

---

[1] The Complaint seems to allege that Jones was not provided help in boarding the van.  The Complaint, however, contradicts this allegation by also alleging that Jones's luggage was put in the van by the driver.  See Complaint at 1-2.  Regardless, there is no allegation that Jones was not helped onto the van because she was disabled and, therefore, discriminated against.

4

was denied service because of her disability.  Indeed, none of the statements Jones attributes to Ms. Sherrie even mention Jones's disability.  For that reason alone, Jones has not stated a claim under Title III of the ADA.

       **2.**       **Title III of the ADA Does Not Permit Recovery of Monetary Damages.**

Even if Jones had adequately alleged a Title III claim – which she has not – she cannot recover monetary damages under Title III since "only injunctive relief is available for violations of Title III."  Reeves, 845 F. Supp. 2d at 107 (citing Wander v. Kaus, 304 F.3d 856, 858 (9th Cir.2002); Daubert v. A–1 Tours & Travel, No. 1:06–cv–00612, 2006 WL 1628234, at *2 (E.D.Cal. June 8, 2006) ("To the extent that Plaintiff seeks damages for a violation under Title III of the ADA, Plaintiff's complaint fails to state a claim because damages are not recoverable under Title III of the ADA; rather, only injunctive relief is available for violations of Title III."); Woods v. Wills, 400 F.Supp.2d 1145, 1163 (E.D.Mo.2005) ("To the extent Ms. Woods' claim is based on other aspects of denial of public accommodation, she cannot state a claim because the only relief she seeks, monetary damages, is unavailable under Title III.")).

Significantly, the United States District Court for the District of Columbia in Reeves granted a Rule 12(b)(6) motion and dismissed a Title III claim against a transportation company where the plaintiff had only sought to recover monetary damages.  Because the only recovery sought by Jones is monetary damages in the amount of $150,000.00 (See Complaint at 3), Jones has failed to state a claim under Title III of the ADA.  Accordingly, this case should be dismissed with prejudice.

## IV.    CONCLUSION

For all of the foregoing reasons, Defendant Shuttle Express, Inc.  (erroneously referred to in the Complaint as Super Shuttle Incorporated), by counsel, respectfully requests that this Court

dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Superior Court Civil Rules.

This 3rd day of October 2016 .

Respectfully submitted,

**SUPER SHUTTLE INCORPORATED**
By Counsel

/s/_____
Stanley P. Wellman (D.C. Bar No. 1031477)
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
sfisher@hccw.com

## RULE 12-I(a) CERTIFICATION

Pursuant to SCR-Civil 12-I(a), the undersigned counsel contacted Plaintiff, *pro se*, to obtain her consent to the relief requested.  Plaintiff, *pro se*, would not consent to the motion.

/s/_____
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman, P.C.
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
sfisher@hccw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of October, 2016, I electronically filed the foregoing with the Clerk of Court using CaseFileXpress, which will send notification of such filing to the following:

Not applicable

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Anne Jones
1827 24th Street, NE
Washington, DC 20002

/s/
Stanley P. Wellman (D.C. Bar No. 1031477)
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
sfisher@hccw.com

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

ANNE JONES,

    Plaintiff,

v.

                                Case No. 2016 CA 0006728
                                Judge: The Honorable Maurice A. Ross
                                Judge
                                Next Event: MOTION TO DISMISS

SUPER SHUTTLE INCORPORATED,

    Defendant.

### **RULE 7.1 DISCLOSURE STATEMENT**

      Pursuant to Rule 7.1, Defendant Shuttle Express, Inc. (erroneously referred to in the Complaint as Super Shuttle Incorporated), by counsel, states as follows:

      1.      No publicly owned company owns 10% or more of Shuttle Express, Inc. shares. Shuttle Express, Inc. is a Maryland Corporation, the sole shareholder of which is SuperShuttle International, Inc., a Delaware Corporation.

      2.      The sole shareholder of SuperShuttle International, Inc. is Transdev On Demand, Inc., a Delaware Corporation.  The sole shareholder of Transdev On Demand, Inc. is Transdev North America, a Delaware Corporation.  Transdev North America is wholly owned by Transdev Group, which is a joint venture of French companies Veolia Environment, S.A. and Caisse des Dépôts et Consignations.   Veolia Environment, S.A. is listed on the Euronext Paris stock exchange.

      Respectfully submitted,

**SUPER SHUTTLE INCORPORATED**
By Counsel

/s/_____
Stanley P. Wellman (D.C. Bar No. 1031477)
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
sfisher@hccw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2016, I electronically filed the foregoing with the Clerk of Court using CaseFileXpress, which will send notification of such filing to the following:

Not applicable

and I hereby certify that I have mailed by United States Postal Service the document to the following:

Anne Jones
1827 24th Street, NE
Washington, DC 20002

/s/_____
Stanley P. Wellman (D.C. Bar No. 1031477)
M. Scott Fisher, Jr. (D.C. Bar No. 1032189)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280
Richmond, Virginia 23255
804-747-5200 - Phone
804-747-6085 - Fax
swellman@hccw.com
sfisher@hccw.com